Hitchcock, J.
The facts and circumstances connected with this case are not new to the court, at least those which may be considered as the leading ones. They have been repeatedly presented to us, have been as often passed upon, but the controversy does not as yet seem to have been closed.
Before proceeding to the consideration of the particular questions arising in this case, it may be well to ascertain what has been the previous action of the court. Previous to the December term, 1831, Raguet commenced a suit against Roll, upon the notes secured by the mortgage, referred to in the statement of the case. This suit was commenced in the court of common pleas of Hamilton county. The defendant pleaded in bar, that before and at the time of the commencement, Charles Roll, the son of the defendant. was suspected and accused by Raguet of having stolen his goods and chattels in Cincinnati ; that Raguet was about to institute a criminal prosecution against Charles, for the theft, and that the consideration for which the note was given, was a promise or engagement on the part of Raguet that he would refrain and desist from instituting %ueh criminal prosecution. To this plea there was a general demurrer. The court of common pleas sustained the demurrer and rendered a judgment against Roll for the amount of the notes.
To rovei’se this judgment, a writ of error was sued out, and the case came on for bearing at the aforesaid December term of this court, 1831. By the decision of the court, the judgment of the court of common pleas was reversed, upon, the principle that ^vhenever an agreement appears to be illegal, immoral, or against public policy, a court of justice leaves the parties as it finds them. If the agreement be executed, the court will not rescind it; if executory, the court will not aid in it's execution. This case is reported at length in 5 Ohio, 400.
Raguet then commenced a suit, by scire facias, upon the mortgage, under the law then in force, to enforce payment by the sale of the mortgaged premises. A plea substantially the same as that inter *56 posed in the action upon the notes, was filed; and, upon trial, they jury found the facts as stated in the plea. A motion was made for a new trial, which the court overruled, sustaining the decision in the former case. 7 Ohio, 76, pt. 1.
Raguet then commenced an action of ejectment upon the mortgage, and this came before the court at the December term, 1836. Roll attempted to pet up the same defense as in the former cases, but it was not allowed by the court; the court holding that a mortgage was not an executory, but an executed contract; and, that as the court would not aid in carrying into effect a contract of the former character, so neither would it aid in avoiding or rescinding a contract of the latter character. 7 Ohio, 70, pt. 2.
What then is the situation, at this time, of the original parties to this contract? The fee of the-land is vested in Raguet or those claiming under him; and, by execution upon the judgment in ejectment, he may at any moment be put into the possession.
This judgment can not be enjoined, because, by ordering *an injunction, the court would be doing, indirectly, what it has refused to do directly. It would in effect amount to the rescission by a judicial tribunal of an executed contract, the consideration of which was against public policy, and which would bo contrary to the opinion of the court, as expressed in the case already cited from 4 Ohio.
Now what is the case before the court? The interest of Roll in the lot of ground was transferred to the complainant by judicial sale in 1839. He has in his hands about $1,500, which belongs to Roll, unless the same is necessary to satisfy prior incumbrances. The complainant prays the court, in the event the mortgage of Raguet is hold to be an incumbrance upon the land, to allow him to redeem; and he prays further that the funds now in his hands may bo applied to that purpose.
The court have already decided, not only that the mortgage is an incumbrance, but have sustained an action of ejectment in favor of the mortgagee, for the recovery of the possession of the mortgaged premises; and as already remarked, the mortgagee may, at any moment, through the instrumentality of the proper writ of execution, acquire the possession. The legal title is vested in the mortgage, but the deed under which he claims, and by virtue of which the title is vested in him, is subject to a condition that the same shall be void, upon the payment of a certain sum of money by the mortgagor. Now *57 there is nothing in this condition requiring of the mortgagor to perform an impossible, immoral, or illegal act. If such were the fact, the condition would be void and the deed absolute. But it is not so. It is a simple condition for the payment of money.
But it may be said that the original consideration for the promise to pay this money was an illegal consideration. Be it so. Still the person to whom the promise was made, can not be permitted to set this up to destroy the effect of a condition inserted in the deed, executed to secure the performance of that promise. When the mortgagee was prosecuting an ejectment upon his deed, we would not and did not permit the mortgagor *to avoid that deed by proving that the consideration was illegal. And now, when the mortgagor comes to redeem, shall we permit the mort-. gagee to defeat that condition, by proving that the consideration for the promise set forth therein was illegal ? This' would not seem to comport with even-handed justice. It would havo been honest in Roll to have performed this condition by the payment of the monejL It would be honest in the complainant to pay it; and wo think he has a right to do it, and thereby redeem the land from the effect of the mortgage.
But, in this case, the mortgagee does not object to the redemption. The objection comes, so far as there is any, from the mortgagor himself. He claims to be discharged from the performance of the condition, and still to retain the land. He seeks to induce this court to do indirectly what it would not do directly. In this aspect of the case, it is nothing more nor less than an attempt to obtain an injunction against the judgment in ejectment. Tuis can not be done. The mortgagor has conveyed this land by a deed duly executed, subject nevertheless to a condition. If he would retain the land, he must perform that condition.
But it is insisted by the counsel of Roll, that admitting the right of the complainant to redeem, still that the surplus money in his hands can not be applied to this object, because, as they say, he purchased the land subject to the mortgage of Raguet. The fact appears to be this: In the decree in the case of Cowfes against Roll and others, under which the complainant purchased, the court, although they ordered a sale, did not undertake to decide the validity oí Raguet’s mortgage. Of course that sale must be subject to this incumbrance. But still the land could not be, and was not sold for any less sum. The law required that it should. *58, 59 be sold for at least two-thirds of the appraised value. It was so sold. The laud itself for its full value; not the land reduced in price in consequence of Eaguet’s mortgage. Under these circumstances, it seems equitable to the court that this surplus should be applied, first, to remove *the incumbrance of the mortgage now in controversy. If anything remains, it must be paid to Boll.
The next question is as to which of the defendants is entitled to the money to be paid for the redemption of this mortgage. McMickon claims as the assignee of Eaguet, by deed executed in 1832; Wood and Abbott, and Brown, Chase & Co., as judgment creditors of Eaguet, under judgments rendered in 1833, and levied on his interest in the mortgaged premises in 1840.
From a careful examination of the deed of assignment, we are clearly of opinion that the interest of Eaguet, by that deed, was vested, in McMicken; and such being the opinion of the court, it is unnecessary to inquire as to the claims of the other defendants.